# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| TRUE SCIENCE HOLDINGS, LLC, *et al.*, | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiffs,** | |
| vs. | **Case No.  2:14CV193DAK** |
| MARS, INCORPORATED, *et al.*, | **Judge Dale A. Kimball** |
| **Defendants.** | |

This matter is before the court on Defendants Mars, Inc. and Kal Kan Foods, Inc.'s

Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure

12(b)(2) for lack of personal jurisdiction.  On January 22, 2015, the court held a hearing on the

motion.  At the hearing, Plaintiff was represented by Richard D. Burbidge and Andrew J. Dymek,

and Defendant was represented by Dominick A. Conde, Cameron M. Hancock, and Dax D.

Anderson.  The court has carefully considered the pleadings and memoranda submitted by the

parties as well as the law and facts relating to the motion.  Now being fully advised, the court

enters the following Memorandum Decision and Order.

## BACKGROUND

This case involves a patent dispute regarding cat treats.  Plaintiff True Science seeks

declaratory judgment that its cat treats do not infringe upon Defendant Mars Inc.'s dual texture

patents relating to pet treats with a crunchy outer shell and a soft inner filling ("co-extruded pet

treats") and that Mars' patents are invalid.

Mars is one of the largest pet treat manufacturers in the United States.  It is a Delaware corporation with its principal place of business in McLean, Virginia.  In 2002, Defendant Kal Kan Foods, Inc. merged with Mars and no longer exists as a legal entity.

True Science is a relatively new company beginning to compete in the pet treat industry. True Science is an Idaho limited liability company with its principal place of business in Eagle, Idaho.  TruRX is a wholly owned subsidiary of True Science with its principal place of business in Eagle, Idaho, and manufacturing facilities in Utah.  M&C USA, LLC, is also a wholly-owned subsidiary of True Science.  M&C USA is a Delaware corporation with its principal place of business in Eagle, Idaho.  Mark and Chappell Limited ("M&C"), a wholly-owned subsidiary of M&C USA, is a limited company organized under the laws of the United Kingdom, with its principal place of business in Ireland.

Mars manufactures and sells co-extruded pet treats under a variety of brands, including the "Temptations®" brand.  True Science manufactures and sells co-extruded pet treats under a variety of brands, including the "Delightibles" brand.

In 1987, M. Francis Gannon founded M&C.  In 1990, M&C began developing various tablets and liquids to help with pet odor and pet wellness.  During the 1990s, Gannon became interested in utilizing pastes as a delivery system for pet wellness products.  In 1996, Gannon was introduced to co-extruded human treats that were crispy on the outside and creamy on the inside. Gannon investigated whether it would be possible to use co-extrusion to make pet treats using M&C's pastes as the filling, and M&C began development of co-extruded pet treats with a manufacturer in Slovenia.

In late 1996, Gannon met with representatives from Mars' UK and Irish subsidiaries.  He discussed M&C's efforts to make co-extruded pet treats using pastes.  Mars' representative expressed interest in proceeding with M&C.  M&C sent samples to Mars.  However, after the meeting, Gannon never heard back from Mars.

In 1997, M&C began offering co-extruded pet treats for sale to European and American veterinarians.  M&C then began selling co-extruded pet treats through different U.S. distributors, including Hartz Mountain.  In November 2000, M&C's distributor, Hartz Mountain, informed Gannon that Mars had claimed that M&C's co-extruded products infringed Mars' U.S. Patent No. 6,117,477 ("'477 Patent").  M&C and Hartz Mountain asserted that the patent was invalid based on prior art and prior sales.

For several months, M&C spent $350,000 in legal fees negotiating with Mars.  Several versions of proposed settlements were drafted.  The '477 patent expressly excluded co-extruded products whose inner component was formed using an aqueous phase.  Throughout negotiations, M&C asserted that its products using aqueous phases did not infringe.

However, also during negotiations, Mars filed a patent application based on the '477 patent but eliminating the claim limitation excluding products using an aqueous phase.  The application was issued as the '746 Patent on November 6, 2001.

Mars then declined to enter into a settlement agreement.  After the settlement negotiations ended in 2001, Hartz Mountain ceased distributing M&C's products.  M&C formed Mark & Chappell (U.S.A.), Inc. in late 2001 to distribute products in the United States and maintain its market share.  With its wholly-owned distributor, M&C continuously sold co-extruded pet products in the United States.  However, M&C did not have the necessary production capacity in

3

its Slovenian factory to meet the supply requirements for premier retailers.

In 2013, True Science purchased M&C and the intellectual property associated with it for approximately $13 million.  In September 2013, True Science leased an industrial facility in Springville, Utah, and built out and equipped a factory that could produce M&C's co-extruded treats on a scale sufficient to supply the largest pet retailers in the United States and Canada.

True Science began marketing a breath-freshening dog treat called Minties to compete with Mars' popular Greenies products.  In 2013, Walmart awarded True Science a substantial amount of preferred shelf space in all of its U.S. stores.  Mars learned of this development at Walmart's Year-Beginning Meeting.  Rick Daw, a sales director for Mars, expressed his dissatisfaction witnessed by True Science's CEO.

In June 2013, Mars challenged True Science's advertising campaign before the National Advertising Division.  Before True Science could respond to that complaint, in July 2013, Mars sued True Science for patent infringement based on the Minties line of dog treats.  That dispute does not involve the co-extruded treats at issue in the present lawsuit.

In March 2014, Mars filed another patent infringement lawsuit against True Science, claiming that its hip & joint products infringe Mars' patents.  True Science alleges that it received no notice or warning before Mars took any of these actions.  Those treats also do not involve the patents at issue in this lawsuit.

True Science has agreed to sell Delightibles branded co-extruded products to Walmart and other major retailers have picked up other co-extruded brands.  Walmart Canada has awarded True Science significant shelf space for Delightibles.  It has also given True Science a permanent display at the end cap of the pet aisle, which previously held Mars' Temptations products.  These

4

changes were announced at Walmart Canada's Year Beginning Meeting the week of February 3, 2014.

In addition, Walmart has agreed to place Delightibles products in its U.S. stores starting July 2014.  Walmart has informed True Science that Mars' representatives have expressed extreme dissatisfaction that Walmart has picked up the Delightibles brand.  Plaintiffs acknowledge that there was no direct contact between themselves and Mars after Walmart decided to begin selling Delightibles and Plaintiffs filing of the present lawsuit.

However, based on Mars's prior history of suing True Science without notice, on March 14, 2014, Plaintiffs filed the instant lawsuit against Mars seeking declaratory judgment on whether its Delightibles pet treats infringe Mars' patents and whether Mars' patents are valid. Mars is registered to do business in the State of Utah and has an agent for service of process in Utah.  Mars, however, has no offices, facilities, or stores in Utah. In response to True Science's lawsuit, Mars filed the present Motion to Dismiss.

On September 26, 2014, after briefing of its Motion to Dismiss was completed, Mars filed a complaint for patent infringement against True Science in the Eastern District of Virginia asserting that True Science's Delightibles products infringe Mars' dual texture patents.  This court had scheduled oral argument on Mars' Motion to Dismiss on October 1, 2014.  However, the court rescheduled oral argument and allowed the parties to brief whether Mars' filing of a separate action impacted the pending motion in this case.

## DISCUSSION

Mars asks this court to dismiss Plaintiffs's Complaint for two reasons: (1) this court lacks subject matter jurisdiction over the declaratory judgment claims because Plaintiffs have not

established that an actual case or controversy exists; and (2) the court lacks personal jurisdiction over Mars because Plaintiffs cannot establish that Mars is at home in Utah.

## I. Subject Matter Jurisdiction

Mars asks this court to dismiss the Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure because there was no actual controversy supporting the exercise of subject matter jurisdiction at the time True Science filed its Complaint. A district court may exercise jurisdiction in a declaratory judgment action only if the facts alleged establish "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "a case of actual controversy" must meet Article III justiciability requirements. To satisfy the case-or-controversy requirements of Article III, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial," and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127.

Prior to the *MedImmune* case, the Federal Circuit used a "reasonable apprehension of suit" test in determining whether there was subject matter jurisdiction over a declaratory judgment action. 549 U.S. at 132 n.11. The Supreme Court, however, rejected the test on the

6

ground that it was unduly restrictive. *Id.* Under its prior precedent, a "case or controversy" existed when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id* at 127. After *MedImmune*, the Federal Circuit has acknowledged the "resulting ease of achieving declaratory judgment jurisdiction in patent cases" on account of the "more lenient standard" announced in *MedImmune*. *Micron*, 518 F.3d at 902.

In a declaratory judgment action, the plaintiff bears the burden to establish the existence of an actual case or controversy. *Id.* at 140. A court may review evidence extrinsic to the pleadings, including affidavits, when considering the factual basis for jurisdiction. *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378 (Fed. Cir. 2012). Also, importantly for purposes of the present motion, jurisdiction depends on the state of things at the time the action was brought. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004).

Plaintiffs argue that their facts would have met the prior apprehension of suit standard and certainly meet the more lenient test after *MedImmune*. To demonstrate the controversy, True Science alleges that its acquisition of M&C in 2013 created a competitive threat to Mars. Mars has since filed two other lawsuits against True Science over other pet treats. Plaintiffs assert that these other cases are relevant to whether a controversy exists between the parties. The Greenies/Minties lawsuit came on the heals of True Science striking a deal to sell Minties at Walmart and Mars provided no prior warning before filing suit. Mars also filed the hip and joint product litigation without any warning to Plaintiffs. True Science's recent deal with Walmart to sell Delightibles in Canada and the United States will cause Mars to lose premier shelf space. A

Mars representative expressed Mars's extreme dissatisfaction that Walmart picked up the Delightibles brand.  Thus, Plaintiffs contend that the fact that Mars has not recently accused Plaintiffs of infringing the co-extruded dual texture patent is no indication that it does not intend to file a lawsuit.

In this case, even if the allegations of the Complaint are taken as true, they fall short of establishing an actual case or controversy and warrant dismissal under Rule 12(b)(1). *MedImmune*, 549 U.S. at 127.  The Complaint is vague as to the relationship of each Plaintiff to Mars and the various products at issue in the patent dispute.  *Microsoft Corp. v. DataTern, Inc.*, 2014 U.S. App. LEXIS 6219, at *28 (Fed. Cir. April 4, 2014) ("Declaratory judgment jurisdiction must be determined on a product-by-product basis").  However, even if Plaintiffs had adequately identified the parties having adverse legal interests and the particular products for which they are entitled to relief, the alleged dispute is conjectural and does not give rise to declaratory judgment jurisdiction.   The dispute between M&C and Mars was over thirteen years ago and would not provide a basis for filing the present declaratory judgment action.  Even if the products are quite similar, which the parties dispute, the significant passage of time demonstrates that no patent infringement suit was real or immediate.

Although the Complaint states that Mars has alleged that Plaintiffs' co-extruded products infringe one or more of the Mars patents and that Mars has expressed its extreme dissatisfaction that the Delightibles brand has been picked up by Walmart, neither the Complaint nor any of the materials submitted in response to Mars's motion to dismiss provide any corroboration for these allegations.  At most, at the time Plaintiffs filed their Complaint, one Mars representative was aware of the Delightibles brand being made or sold in the United States.  The Mars representative

spoke only to Walmart, not any of the Plaintiffs, stated that he was disappointed that Walmart had decided to carry the brand, and made no reference to whether Delightibles infringed Mars's patents.  Mars took no action to enforce its patent rights prior to Plaintiffs filing of their Complaint.  Even with the prior history between the parties, a vague statement that Mars was dissatisfied with Walmart for carrying Delightibles does not create a real and immediate threat of a patent infringement lawsuit.  The prior lawsuits involved other products and other patents. These unspecific, vague allegations fall short of what is needed to establish the existence of an actual case or controversy.

An actual controversy to support declaratory judgment jurisdiction requires "an injury in fact traceable to the patentee," which exists only if the plaintiff has alleged both (1) a affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity."  *Association for Molecular Pathology v. United States Patent & Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012).  An affirmative act requires more "than a communication from a patent owner to another party, merely identifying its patent and the other's product line.'"  *3M Co v. Avery Dennison Corp.*, 673 F.3d 1372, 1378-79 (Fed. Cir. 2012).

Even if Plaintiffs have meaningfully engaged in activities to start manufacturing and selling its products, there is no evidence that Mars has acted affirmatively against any of them to enforce its rights as to the dual texture patents.  All of Plaintiffs evidence relates to the other litigation between the parties.  Declaratory judgment jurisdiction cannot rest on a general expression of dissatisfaction about shelf space at one retailer.  The Delightibles product, which was the only one expressly identified in the Complaint, was not for sell in the United States as of

9

the filing of the lawsuit.  Mars could not possibly have analyzed the product for infringement prior to the date of suit.  Mars has not and cannot threaten an infringement action when it does not know anything about the product.

Mars's new patent infringement lawsuit against Plaintiffs is also irrelevant to its motion to dismiss in this case because Plaintiffs are required to show that a case or controversy existed at the time they filed their Complaint.  *Grupo Dataflux v. Atlas Global Group L.P.*, 124 S. Ct. 1920, 1924 (2004).  Post-filing events cannot create subject matter jurisdiction for a declaratory judgment action.  *Innovative Therapies Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1383 (Fed. Cir. 2010).

Plaintiffs argue that the new lawsuit alleges that Plaintiffs have been infringing Mars's patents since "at least about March 2014."  This allegation in the Virginia Complaint affirmatively answers what the Federal Circuit has called a "useful question" in its jurisdictional analysis–whether the patentee had a cause of action against the plaintiffs when the declaratory judgment action was filed.  However, Plaintiffs ignore the actual facts that Mars made such allegations months after Plaintiffs filed this lawsuit.

The Federal Circuit has stated that subsequent events can "reinforce the correctness" of its conclusions regarding the existence of an actual controversy.  *See BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed. Cir. 1993) ("Although it is the situation at the time the suit was filed that establishes the existence *vel nom* of an actual controversy, subsequent events can reinforce the correctness of the conclusion.").  However, at the time Plaintiffs filed the present lawsuit, only one Mars employee expressed dissatisfaction at the Delightibles product being given shelf space and no mention of patent infringement had even been made.  The jurisdiction

of the court depends on the state of things at the time the action was filed.  Plaintiffs attempt to minimize the importance of Mars' lack of awareness of the Delightibles product until seeing Plaintiffs' Complaint.  However, such a lack of awareness of the infringing product is dispositive of the issue of subject matter jurisdiction. *Prasco LLC v. Medicis Corp.*, 537 F.3d 1329, 1334 (Fed. Cir. 2008).   Mars' allegations in its Virginia Complaint based on what it knew in September 2014, not March 2014, does not confer subject matter jurisdiction on this court. Accordingly, the court grants Mars's motion to dismiss for lack of subject matter jurisdiction.

## II.  Personal Jurisdiction

Mars also moves to dismiss Plaintiffs' Complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction.  However, because the court has found no subject matter jurisdiction exists in this court, it is not necessary or appropriate to rule on the personal jurisdiction issue.

## CONCLUSION

For the reasons stated above, Defendants's Motion to Dismiss is GRANTED.  The Clerk of Court is directed to close the case, each party shall bear its own fees and costs.

DATED this 11th day of February, 2015.

BY THE COURT:

DALE A. KIMBALL
United States District Judge